UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

____

AIVERY FULLER-RAGLAND,

        Plaintiff,                    Case No. 2:25-cv-120

v.                                        Honorable Sally J. Berens

PATRICIA LEWIS et al.,

        Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* in a separate order. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 1, PageID.4.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S.

344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

2

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.  Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the following AMF staff: Nurse Patricia Lewis and "HUM"[2] Unknown Party. (Compl., ECF No. 1, PageID.2.)

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

[2] Plaintiff states that Defendant HUM Unknown Party was a housing unit manager at AMF (Compl., ECF No. 1, PageID.2); however, based on the facts in the complaint, which detail alleged improper medical determinations by Defendant HUM Unknown Party, it appears that this Defendant was likely the health unit manager at the prison, rather than the housing unit manager.

In Plaintiff's complaint, he alleges that on March 18, 2024, Defendant Lewis prescribed him medication to "KOP" (i.e., to keep on his person) "for a[n] ear infection."[3] (*Id.*, PageID.3.) Two weeks later, Plaintiff submitted a kite to "the HUM," apparently, Defendant Unknown Party, "because the medication the Defendant gave the Plaintiff caused a tummer [sic] to form on the left side of his head behind his ear." (*Id.*) Plaintiff states that he sought "immediate health care," but he "was denied adequate healthcare until 5/29/24." (*Id.*)

Plaintiff alleges that on May 29, 2024, Defendant Lewis "performed surgery on [his] head, first shaving his head then slicing his head open and personally removing the tummer [sic] that was grown [sic] from the improper medication prescribed by the Defendant Lewis [the] month prior." (*Id.*) Plaintiff received stitches and was given "a[n] ace bandage on his head." (*Id.*) Two weeks later, "Plaintiff was placed in segregation" for the month of June. (*Id.*) At an unspecified time, Plaintiff's stitches "bust [sic] back open," and Plaintiff alleges that this occurred because Defendant Lewis "failed to properly remove the entire tummer [sic]." (*Id.*) "Plaintiff [sent a] kite [to] HUM to request offsite surgery, but was denied adequate treatment." (*Id.*)

Based on the foregoing allegations, Plaintiff avers that Defendant Lewis violated his rights under the Eighth Amendment to the United States Constitution and his rights under state law "by prescribing Plaintiff a medication that caused a tummer [sic]" and "by performing open surgery on the Plaintiff w[ith]out a signed consent form to perform surgery on his head." (*Id.*) Additionally, the Court construes Plaintiff's complaint to raise an Eighth Amendment claim against Defendant HUM Unknown Party and a Fourteenth Amendment due process claim against Defendant Lewis. As relief, Plaintiff seeks monetary damages. (*See id.*, PageID.4.)

---

The Court's determinations regarding Plaintiff's claims, as set forth in this opinion, remain the same regardless of this Defendant's specific job title.

[3] In this opinion, the Court corrects the capitalization in quotations from Plaintiff's complaint.

4

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under Section 1983

5

is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Eighth Amendment Claims Against Both Defendants

Plaintiff claims that Defendants violated his Eighth Amendment rights by providing inadequate medical treatment during his incarceration at AMF. (*See generally* Compl., ECF No. 1.)

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes, U.S. Const. amend. VIII, and the Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g., Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that

6

prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the United States Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605

7

(6th Cir. 2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, . . . he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 604-05 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). The prisoner must demonstrate that the care the prisoner received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

### 1. Objective Component

As to the objective component, for the purposes of this opinion, the Court will assume, without deciding, that the side effects that Plaintiff describes in his complaint satisfy the objective component of the relevant two-prong test.

### 2. Subjective Component

Turning to the subjective component—i.e., the requirement that a plaintiff alleges sufficient facts to show that "the official [or medical provider was] both . . . aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]," and that the official or medical provider "also dr[e]w the inference," *Farmer*, 511 U.S. at 837—the Court addresses Plaintiff's allegations against each named Defendant below.

#### a. Defendant Lewis

Plaintiff alleges that Defendant Lewis violated his rights under the Eighth Amendment "by prescribing Plaintiff a medication that caused a tummer [sic]" and "by performing open surgery on the Plaintiff without a signed consent form to perform surgery on his head." (Compl., ECF No. 1, PageID.3.)

As an initial matter, with respect to Defendant Lewis's action of prescribing an unnamed medication to Plaintiff for his ear infection—which Plaintiff alleges caused a tumor "to form on the left side of his head behind his ear"—"the prescribing of drugs by a physician[, or other medical provider,] which causes side effects does not constitute deliberate indifference." *Mason v. Eddy*, No. 1:18-cv-2968, 2019 WL 3766804, at *11 (N.D. Ohio Aug. 9, 2019) (citations omitted); *see, e.g.*, *Bryant v. Kaskie*, 744 F. App'x 39, 42 (3d Cir. 2018) (concluding that the prison medical provider's "failure to inform [the prisoner-plaintiff] of the potential side effects of [a prescribed medication] [wa]s insufficient to demonstrate deliberate indifference"); *Walker v. Abdellatif*, No. 1:07-cv-1267, 2009 WL 579394, at *7-8 (W.D. Mich. Mar. 5, 2009) (discussing that "medication adjustments involve the doctor's medical judgment regarding plaintiff's treatment," and a plaintiff's "disagreement with the health care providers regarding his diagnosis and treatment does not rise to the level of a federal constitutional violation" (citations omitted)); *Christensen v. United States*, No. 5:11-321-KKC, 2013 WL 4521040, at *4 (E.D. Ky. Aug. 26, 2013) (discussing

9

that the doctor's "decision to continue [the inmate's] prescription for [the medication that caused side effects] was evidently based upon her medical judgment that its benefits to his long-term cardiac health outweighed its detrimental side effects"). Furthermore, although it is clear from Plaintiff's complaint that he disagreed with Defendant Lewis's decision to prescribe the medication in question after Plaintiff experienced the above-described side effects, "a patient's disagreement with his physicians over the proper course of treatment alleges, at most, a medical-malpractice claim, which is not cognizable under § 1983." *Darrah*, 865 F.3d at 372 (citations omitted); *Mitchell*, 553 F. App'x at 605.

Next, Plaintiff alleges that at an unspecified time following the removal of the tumor, Plaintiff's stitches "bust [sic] back open," and Plaintiff claims that this occurred because Defendant Lewis "failed to properly remove the entire tummer [sic]." (Compl., ECF No. 1, PageID.3.) It is clear that Plaintiff blames Defendant Lewis for the reopening of his stitches; however, besides Plaintiff's conclusory statement faulting Defendant Lewis, Plaintiff fails to allege any *facts* to show that Defendant Lewis was deliberately indifferent to Plaintiff's serious medical needs. Indeed, it is clear that Plaintiff disagrees with the treatment that he received from Defendant Lewis and believes that she did not properly remove the tumor on May 29, 2024; however, as discussed above, Plaintiff's disagreements with Defendant Lewis's treatment decisions are insufficient to state an Eighth Amendment claim.

Finally, Plaintiff claims that Defendant Lewis violated his Eighth Amendment rights "by performing open surgery on the Plaintiff without a signed consent form to perform surgery on his head." (*Id.*) Notably, Plaintiff alleges only that he did not *sign* a consent form; Plaintiff does not allege that he objected to the surgery but that Defendant performed it anyway. Plaintiff also does not allege that he was harmed by Defendant Lewis's failure to obtain a written consent form from

10

him.[4] And Plaintiff does not allege that he would not have signed the form or that he did not otherwise choose to have the surgery. Further, Plaintiff does not allege that Defendant Lewis had the intent to deprive Plaintiff of his right to refuse surgery or that Defendant Lewis was otherwise deliberately indifferent to Plaintiff's right to refuse surgery. Instead, Plaintiff appears to ask the Court to fabricate plausibility to his claims from mere ambiguity; however, ambiguity does not support a claim. Based on the facts alleged in the complaint, Plaintiff fails to show that Defendant Lewis's alleged failure to have Plaintiff sign a consent form prior to the surgery constituted deliberate indifference. *Cf. Quarles v. Bontempo*, No. 2:23-cv-1601, 2025 WL 1822675, at *5 (E.D. Pa. July 2, 2025) (discussing the differences between an Eighth Amendment claim and a Fourteenth Amendment due process claim for allegations of prisoners' lack of consent for medical procedures).

In summary, for the reasons set forth above, Plaintiff fails to state an Eighth Amendment claim against Defendant Lewis.

### b.    Defendant HUM Unknown Party

Plaintiff's allegations against Defendant HUM Unknown Party are limited and are not a model of clarity. Plaintiff alleges only that two weeks after March 18, 2024, the date on which Defendant Lewis prescribed the medication in question for Plaintiff's ear infection, Plaintiff submitted a kite to "the HUM," apparently, Defendant Unknown Party, "because the medication the Defendant[, i.e., Defendant Lewis,] gave the Plaintiff caused a tummer [sic] to form on the left side of his head behind his ear." (Compl., ECF No. 1, PageID.3.) Plaintiff then alleges that he sought "immediate health care," but he "was denied adequate healthcare until 5/29/24." (*Id.*)

---

[4] The Court notes that Plaintiff believes that Defendant Lewis did not fully remove the tumor in surgery and disagrees with the outcome of the surgery; however, this disagreement with Defendant Lewis's treatment actions does not show a harm from the *failure to obtain a written consent form*.

11

Finally, Plaintiff alleges after his stitches "bust [sic] back open," "[he sent a] kite [to] HUM to request offsite surgery, but was denied adequate treatment." (*Id.*)

As an initial matter, although Plaintiff alleges that he submitted a kite to Defendant HUM Unknown Party around the end of March of 2024 and alleges that he did not receive "adequate healthcare" until May 29, 2024, besides Plaintiff's allegation about sending this initial kite to Defendant HUM Unknown Party, Plaintiff fails to allege any facts about what contact, or lack thereof, he had with healthcare for the two months in question, starting at the end of March of 2024 and continuing until May 29, 2024. (*See id.*) Under these circumstances, Plaintiff fails to allege any facts to suggest that Defendant HUM Unknown Party was aware of Plaintiff's need for medical treatment during the entire two-month period in question. The fact that Plaintiff sent a healthcare kite to Defendant HUM Unknown Party at the start of the two-month period does not, on its own, show that Defendant HUM Unknown Party knew that Plaintiff had not received "adequate healthcare" for the entire alleged two-month period. Moreover, besides Plaintiff's conclusory assertion that he did not receive "adequate healthcare" for this two-month period, Plaintiff alleges no facts to support this claim. And, notably, Plaintiff does not allege that he received no healthcare during this period, just healthcare that he deemed inadequate.

Furthermore, as to Defendant HUM Unknown Party's alleged denial of Plaintiff's request for offsite surgery, prisoners are not entitled to the medical care of their choosing. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (discussing that prisoners are not entitled to "unqualified access to health care" (citation omitted)). Although Plaintiff vaguely alleges that the denial of his request for offsite surgery resulted in the denial of "adequate treatment," Plaintiff does not allege that he received no treatment after his request for offsite surgery was denied, just treatment that he deemed to be inadequate; and Plaintiff alleges no facts about what was inadequate about the treatment he

received at AMF after the denial of his offsite surgery request. Indeed, Plaintiff alleges no facts about what specific treatment, or lack thereof, Plaintiff received at AMF after the denial of his offsite surgery request. Without any such facts, Plaintiff necessarily fails to show that Defendant HUM Unknown Party was deliberately indifferent to Plaintiff's serious medical needs.

Accordingly, Plaintiff fails to state an Eighth Amendment claim against Defendant HUM Unknown Party. Plaintiff raises no other claims against Defendant HUM Unknown Party, and as such, Defendant HUM Unknown Party will be dismissed from this suit.

### B.    Fourteenth Amendment Due Process Claim Against Defendant Lewis

Assuming, without deciding, that Plaintiff may raise a due process claim regarding Defendant Lewis's alleged failure to have Plaintiff sign a consent form "to perform surgery on [Plaintiff's] head," as explained below, Plaintiff fails to state such a claim. (Compl., ECF No. 1, PageID.3.)

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted). Further, "[s]ubstantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). Specifically, "[s]ubstantive due process 'prevents the government

13

from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)).

Courts have recognized that prisoners "retain a limited right to refuse treatment and a related right to be informed of the proposed treatment and viable alternatives," and some courts have analyzed a failure to do so as a claim arising under the Due Process Clause of the Fourteenth Amendment. *White v. Napoleon*, 897 F.2d 103, 112–14 (3d Cir. 1990) (discussing that pursuant to the Due Process Clause of the Fourteenth Amendment, "[p]risoners have a right to such information as is reasonably necessary to make an informed decision to accept or reject proposed treatment, as well as a reasonable explanation of the viable alternative treatments that can be made available in a prison setting"); *Benson v. Terhune*, 304 F.3d 874, 884–85 (9th Cir. 2002) (discussing the Third Circuit's recognition of the right to medical information as set forth in *Napoleon* and describing it as a "reasonable application of Supreme Court precedent"); *see Pabon v. Wright*, 459 F.3d 241, 246 (2d Cir. 2006) (discussing that "the Fourteenth Amendment's recognized liberty interest in an individual's right to refuse medical treatment carries with it a concomitant right to such information as a reasonable patient would deem necessary to make an informed decision regarding medical treatment," and that "[t]o establish a violation of this right, a prisoner must show that (1) government officials failed to provide him with such information; (2) this failure caused him to undergo medical treatment that he would have refused had he been so informed; and (3) the officials' failure was undertaken with deliberate indifference to the prisoner's right to refuse medical treatment"); *Quarles*, 2025 WL 1822675, at *5 & n.7, 7–9 ("To sustain an 'informed consent' substantive due process claim, the prisoner must prove that (1) he was deprived of information that a reasonable patient would deem necessary to make an informed decision about

his medical treatment, (2) the defendant acted with deliberate indifference to the prisoner's right to refuse treatment, and (3) if the prisoner had received the information, he would have refused the treatment." (citation omitted)).

Here, Plaintiff does not allege that Defendant Lewis failed to disclose information that actually impaired his due process right to refuse treatment. Indeed, Plaintiff does not allege that Defendant Lewis failed to disclose information about the surgery in question, let alone that Lewis failed to disclose information that actually impaired his due process right to refuse treatment. Instead, Plaintiff alleges only that he did not *sign* a consent form. (*See* Compl., ECF No. 1, PageID.3.) As discussed above in the context of Plaintiff's Eighth Amendment claims regarding the matter, Plaintiff does not allege that he objected to the surgery but that Defendant performed it anyway. And Plaintiff does not allege that he was harmed by Defendant Lewis's failure to obtain a written consent form from him, that he would not have signed the form, or that he did not otherwise choose/consent to have the surgery. Plaintiff must allege facts to support his claims, and in this instance, he has not done so. Simply put, for the reasons set forth above, Plaintiff's factual allegations about Defendant Lewis's failure to have Plaintiff *sign* a consent form are insufficient to state a constitutional claim. Accordingly, any intended due process claims regarding Defendant Lewis's failure to have Plaintiff sign a consent form will be dismissed for failure to state a claim.

    **C.**    **State Law Claims Against Defendant Lewis**

Plaintiff brings state law claims against Defendant Lewis. (*See* Compl., ECF No. 1, PageID.3 (alleging that Defendant Lewis engaged in "malpractice").)

As an initial matter, claims under Section 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th

Cir. 1994). Therefore, Plaintiff's assertion that Defendant Lewis violated state law fails to state a claim under Section 1983.

Furthermore, in determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)). Here, Plaintiff's federal claims against Defendant Lewis will be dismissed, and the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims against Defendant Lewis. Therefore, Plaintiff's state law claims will be dismissed without prejudice.

## Conclusion

Having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint will be dismissed without prejudice for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c), and because the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims against Defendant Lewis. The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore*, 114 F.3d at 611. For the same reasons the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue Plaintiff might

raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court certifies that an appeal would not be taken in good faith.

    A judgment consistent with this opinion will be entered.


Dated:  August 12, 2025                    /s/ Sally J. Berens
                                                        SALLY J. BERENS
                                                        United States Magistrate Judge